**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SENDTEC, INC.,

       Plaintiff,

v.                                    Case No.  8:07-cv-1643-T-24-TGW

COSMETIQUE, INC.,

       Defendant.
_____/

**ORDER**

       This cause comes before the Court on a Motion to Dismiss filed by defendant Cosmetique,
Inc. ("Cosmetique"), for lack of personal jurisdiction. (Doc. No. 8).  Alternatively, Cosmetique
requests that the Court transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. §
1404.  Plaintiff SendTec, Inc. ("SendTec") filed a brief in opposition (Doc. No. 10), to which
Cosmetique filed a reply (Doc. No. 13).

**I.**      **Background**

       SendTec is a Delaware corporation with its principal place of business in St. Petersburg,
Florida.  SendTec is a marketing company specializing in online advertising.  Cosmetique, an
Illinois corporation with its sole office in Illinois, is a direct marketer of cosmetic products.
Cosmetique designs and develops all of its products in Illinois.

       In 2002, Cosmetique's Chief Marketing Officer, Tony Abate, contacted SendTec's Chief
Executive Officer, Paul Soltoff, in Florida via telephone to discuss the possibility of entering into
an internet marketing agreement.  (Abate aff.; Soltoff aff.).  Abate knew that SendTec's

1

representatives were based in Florida and that SendTec performed its work in Florida.  (Abate aff.; Soltoff aff.).  SendTec and Cosmetique were able to execute a contract later that year.

After the 2002 contract, Cosmetique and SendTec entered into a second contract that lasted from August 2004 through September of 2006.  On September 18, 2006, Cosmetique and SendTec entered into a third contract ("the 2006 contract"), which is the contract at issue in this case.  The 2006 contract was for a twelve month, renewable term, and the contract states that it is governed by Illinois law.

The 2006 contract required SendTec to perform various internet marketing services for Cosmetique, which SendTec performed in its St. Petersburg office and required thousands of man-hours and constant communication with Cosmetique.  (Obeck aff.).  During this time, Cosmetique sent more than thirty emails and made more than thirty phone calls to Eric Obeck, President of SendTec, in Florida relating to the performance of the contract.  (Obeck aff.).

The 2006 contract did not specify the place for payments due under the contract.  However, from the date of the 2006 contract until June 29, 2007, Cosmetique sent all of the payments due under the 2006 contract to SendTec's St. Petersburg office.  (Obeck aff.).  SendTec's Florida address was typed on the front of each check that Cosmetique sent to SendTec.  (Obeck aff.).

In July 2007, Cosmetique discontinued making payments to SendTec.  Thereafter, SendTec filed a breach of contract claim against Cosmetique due to Cosmetique's failure to make the payments due under the 2006 contract, claiming over $2 million in damages.  In the complaint, SendTec alleges that Cosmetique is subject to the personal jurisdiction of this Court because it breached a contract in Florida by failing to perform acts required to be performed in Florida.

In response, Cosmetique filed the instant motion to dismiss for lack of personal jurisdiction.

2

In the alternative, it moved to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404.  As explained below, both motions are denied.

## II.     Personal Jurisdiction

A plaintiff asserting that personal jurisdiction exists over a nonresident defendant need, at the outset, only allege sufficient facts to make out a prima facie case of jurisdiction.  *Electro Engineering Products Co. v. Lewis*, 352 So.2d 862, 864 (Fla. 1977).  If the defendant wishes to challenge that claim of personal jurisdiction, he or she must file an affidavit supporting that position. *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989).  If the defendant does this, then the burden is placed on the plaintiff to file an affidavit proving the basis upon which jurisdiction is appropriate.  *Id*.

Usually, the affidavits the parties submit are not in conflict with each other and the court can make a jurisdictional decision based upon those undisputed facts.  *See id.* at 502-03.  In some cases, however, the respective affidavits are in direct conflict.  In *Venetian Salami*, the Florida Supreme Court addressed what should be done in these cases, holding that "the trial court will have to hold a limited evidentiary hearing in order to determine the jurisdiction issue."  *Id.* at 503.

If the court determines that an evidentiary hearing is not necessary, it can properly decide whether exercising personal jurisdiction over the defendant is appropriate.  A federal court sitting in diversity jurisdiction may exercise personal jurisdiction over a defendant only if the following two requirements are met: (1) the state long-arm statute allows the court to exercise jurisdiction, and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)(citation omitted).

3

**A.      The Need for an Evidentiary Hearing**

SendTec's complaint stated that Cosmetique is subject to personal jurisdiction in Florida

because Cosmetique breached a contract in Florida by failing to perform acts that the contract

required be performed in Florida; specifically, by failing to send payments to SendTec in Florida.

In response, Cosmetique argues that it is not subject to personal jurisdiction in Florida.  Cosmetique

states that Andrew Thompson, Cosmetique's former vice president of marketing, negotiated the 2006

contract and that Thompson worked exclusively from Illinois. (Venturini aff.).  Cosmetique points

out that all of the face-to-face meetings regarding the 2006 contract occurred with SendTec sending

its representatives to Illinois, and all contracts between the parties were negotiated either over the

phone or by e-mail.  (Venturini aff.).  Finally, Cosmetique argues that the fact that SendTec

performed its obligations under the 2006 contract in Florida is irrelevant to the jurisdictional analysis,

because SendTec's performance could have been performed anywhere, and it is Cosmetique's (not

SendTec's) contacts with Florida that are at issue.

SendTec responded with several affidavits.  There are no points of conflict among the

affidavits submitted on issues that are material to the disposition of this case.[1]  Therefore, the Court

will resolve the jurisdictional question without holding an evidentiary hearing.

---

[1]There is one disparity worth noting, however.  SendTec included an affidavit from its
president, Eric Obeck, who alleged that Chuck Campbell was Cosmetique's lead negotiator for
the 2006 contract and that Campbell did such negotiating from his Florida home.  In its reply
brief, Sendtec submitted an affidavit from Campbell to rebut these assertions.  The Court need
not resolve this conflict, because even assuming that Campbell was not the lead negotiator for
Cosmetique regarding the 2006 contract and that any part he played relating to the negotiation of
the 2006 contract was performed in Illinois, the Court still finds that it has personal jurisdiction
over Cosmetique.

### B.      Florida's Long-Arm Statute

Having determined that an evidentiary hearing is not necessary, the Court will proceed to decide the jurisdictional question.  This begins, of course, with an analysis under Florida's long-arm statute.  Because state law governs the Florida long-arm statute, a federal court is required to construe the statute as would the Florida Supreme Court.  *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

SendTec argues that personal jurisdiction exists under Florida's long-arm statute because Cosmetique breached the 2006 contract by failing to pay SendTec at its St. Petersburg office for services rendered.  The Florida long-arm statute provides that statutory long-arm jurisdiction may be asserted over a nonresident for "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state."  Fla. Stat. § 48.193(1)(g).

Failure to pay a contractual debt where payment is due to be made in Florida is sufficient to satisfy § 48.193(1)(g).  *Hartcourt Companies v. Hogue*, 817 So.2d 1067, 1070 (Fla. 5th DCA 2002).  Where a contract does not specify the place of payment, Florida courts have consistently held that it is presumed to be the payee's place of business.  *See id.* (citation omitted); *Global Satellite Communication Co. v. Sudline*, 849 So.2d 466, 468 (Fla. 4th DCA. 2003)(citations omitted).

The 2006 contract does not specify the place of payment, and as a result, the presumption is that payment is to be made at SendTec's place of business in St. Petersburg, Florida.  *See id.*  Therefore, Cosmetique's failure to make payments due to SendTec under the 2006 contract is sufficient to satisfy Florida's long-arm statute.  *See Laser Electrical Contractors, Inc. v. C.E.S. Indus., Inc.*, 573 So. 2d 1081, 1083 (Fla. 4th DCA 1991)(citations omitted); *Hartcourt Companies*, 817 So.2d at 1070; *Global Satellite*, 849 So. 2d at 468.

5

## C.     Due Process

Due process requires the defendant to have certain minimum contacts with the forum, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  For the reasons stated below, the Court finds that exercising personal jurisdiction over Cosmetique will not violate due process.

### i.     Minimum Contacts

Although Florida's long-arm statute extends to cover Cosmetique's actions, the Constitutional touchstone is whether the defendant purposefully established "minimum contacts" with the forum state.  The fact that a defendant does not physically enter the state does not necessarily mean that it can avoid jurisdiction in the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)(citations omitted).  Under the doctrine of specific jurisdiction, a defendant that has "isolated and sporadic contact" with Florida may still be subject to jurisdiction in Florida if the defendant purposefully directs activities towards Florida and the suit arises out of, or is related to, those activities.  *Baker Elecs, Inc. v. Pentar Sys., Inc.*, 219 F. Supp.2d 1260, 1264 (M.D. Fla. 2002)(citations omitted).  The nonresident's activities and connection with the forum state must be such that the defendant would "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Eleventh Circuit has adopted a three-part test to decide whether the minimum contacts requirement is met:

> First, the contacts must be related to the plaintiff's cause of action . . ..  Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ..  Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

6

*Posner*, 178 F.3d at 1220 (quoting *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11ᵗʰ Cir. 1993)).

At the outset, it should be noted that failure to pay money due under a contract in Florida, standing alone, is insufficient to obtain jurisdiction over a nonresident defendant. *Global Satellite*, 849 So.2d at 469 (citations omitted); *Venetian Salami*, 554 So.2d at 503 (citation omitted). However, Cosmetique's contacts with Florida extend beyond payments being due there.

In *Sea Lift, Inc. v. Costarricanense De Petroleo, S.A.*, 792 F.2d 989, 994 (11ᵗʰ Cir. 1986), the court identified factors that could be considered contacts with a forum. The court stated that "[a] direct solicitation by a foreign defendant of the business of a forum resident has been held to be 'purposeful availment' in cases where either a continuing relationship or some in-forum performance on the part of the plaintiff was contemplated." *Id.* (internal citations omitted); *see also Banco Inversion, S.A. v. Celtic Finance Corp.*, 907 So. 2d 704, 709 (Fla. 4ᵗʰ DCA 2005)(finding that since the non-resident defendant made the initial contact with the Florida plaintiff, maintained a continuing relationship through letters and phone calls, and the plaintiff performed hundreds of hours of services under the contract in Florida, the defendant had sufficient minimum contacts with Florida); *Industrial Cas. Ins. Co. v. Consultant Assocs., Inc.*, 603 So. 2d 1355, 1357 (Fla. 3d DCA 1992)(finding sufficient minimum contacts over a non-resident defendant where the defendant contacted the Florida plaintiff for services, the defendant sent correspondence to the plaintiff in Florida, the plaintiff's services were performed in Florida, and payment was due in Florida).

SendTec argues that minimum contacts have been established because Cosmetique solicited SendTec's services in 2002, which led to their continuing relationship and eventually resulted in the 2006 contract. Furthermore, SendTec points out that the parties contemplated that SendTec's

7

performance under the 2006 contract would occur in Florida.  SendTec further argues that it has carried out numerous activities relating to the 2006 contract in Florida, the contract required a constant exchange of information between the parties' respective offices in Florida and Illinois, and it was foreseeable that Cosmetique's failure to make payments under the contract would cause injury to SendTec in Florida.

Applying the three-part test set forth in *Posner*, it becomes clear that the minimum contacts requirement has been met.  First, Cosmetique's contacts are directly related to SendTec's cause of action.  For example, Obeck has stated that he received over thirty e-mails from various Cosmetique employees since around the time the 2006 contract was formed.  Cosmetique sent all of its payments to SendTec's office in Florida.  Abate stated that Cosmetique knew from the outset of the relationship that SendTec would perform most of the work required under the contract in Florida and that SendTec would expect payments be sent to its Florida office.

These same facts show that Cosmetique purposefully availed itself of the privilege of conducting business within the forum.  Notably, the relationship between SendTec and Cosmetique commenced only after Abate sought out SendTec's services in 2002.  *See Pacific Coral Shrimp v. Bryant Fisheries*, 844 F. Supp. 1546, 1550 (S.D. Fla. 1994)(noting the importance, in a jurisdictional analysis, that the non-resident defendant sought out the plaintiff's services); *Sea Lift*, 792 F.2d at 994.

Finally, since Cosmetique has deliberately established "continuing obligations" between itself and SendTec and should have been aware that its failure to make payments to SendTec in Florida would cause damages in Florida, Cosmetique could have reasonably anticipated being haled into a Florida court.  While random, fortuitous, or attenuated contacts with the forum state are insufficient to put a defendant on notice that it should anticipate being subject to the forum state's jurisdiction,

8

Cosmetique's contacts with Florida cannot reasonably be characterized as random, fortuitous or attenuated. *Jet Charter Serv. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990)(citation omitted). The 2006 contract was not a one time deal; rather, the 2006 contract was the culmination of numerous interactions between Cosmetique in Illinois and SendTec in Florida that was intended to last for at least one year.

Cosmetique points to the fact that the 2006 contract included a clause that stated the contract would be governed by Illinois law. While a choice of law provision can be a factor to be considered, Cosmetique's other contacts with Florida are sufficient to satisfy the minimum contacts requirement.

### ii.    Fair Play and Substantial Justice

Having found that Cosmetique purposefully established minimum contacts within Florida, these contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. In making this determination, courts consider the following factors:

> (1) the burden on the defendant in defending the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.

*Walack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp.2d 1358, 1370-71 (M.D. Fla. 2003) (citing *Burger King*, 471 U.S. at 477).

Cosmetique makes various arguments as to why litigating this matter in Florida would violate fair play and substantial justice; however, the Court finds these arguments unavailing. Cosmetique argues it has no significant meaningful contacts with Florida, but as the Court has already determined, this is simply not true. It further argues that most of its witnesses are in Illinois, but it is clear that

9

some of its witnesses have Florida ties.  For instance, Chuck Campbell and Harry Lamberson, two

of Cosmetique's board members, have retired to Florida.  *See Posner*, 178 F.3d at 1221 (considering

the fact that two of the defendant's directors were Florida residents).  Abate is a member of

SendTec's board of directors and presumably has connections to Florida.  In short, the Court does

not find the burden that would be placed on Cosmetique were it forced to litigate in Florida rises to

a level as to violate fair play and substantial justice.

Perhaps Cosmetique's best argument here is that the choice of law provision in the 2006

contract requires the claim to be decided under Illinois law.  However, the Court does not find that

Cosmetique's interest in having an Illinois court rule on Illinois law outweighs to any significant

extent SendTec's interest in the convenience of litigating in its home state.  Furthermore, this Court

is able to apply Illinois law to this case, and Florida has an interest in adjudicating a dispute in which

one of its residents alleges that it has been injured in Florida.

Thus, litigating this dispute in Florida would not violate traditional notions of fair play and

substantial justice.  Having determined that sufficient minimum contacts between Cosmetique and

Florida exist, and that this Court's exercise of jurisdiction over Cosmetique would not offend

traditional notions of fair play and substantial justice, the Court concludes it may properly exercise

personal jurisdiction over Cosmetique.

**III.     Motion to Transfer the Case to the Northern District of Illinois**

Cosmetique next requests that the Court transfer the case to the Northern District of Illinois

under the authority granted by 28 U.S.C. § 1404.  That section provides that "[f]or the convenience

of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought."  "The party seeking a transfer of venue

10

'has the burden of persuading the trial court that the transfer is appropriate and should be granted.'"

*Sterling v. Provident Life and Accident Ins. Co.*, 519 F. Supp.2d 1195, 1204 (M.D. Fla. 2007)

(quoting *American Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp.2d 1347, 1351 (M.D. Fla.

1999)).  To overcome the presumption in favor of a plaintiff's choice of forum, the defendant must

demonstrate that the balance of convenience strongly favors a transfer.  *See id*.  The trial court has

broad discretion in making a determination to transfer.  *See id.*

> In making such a determination, seven factors must be considered:
>
> Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* (quoting *American Aircraft,* 55 F. Supp.2d at 1351).  Considerable weight should be given to the

plaintiff's choice of forum and providing for the convenience of the witnesses.  *Id.* (citation omitted).

Even assuming that jurisdiction in the Northern District of Illinois would be appropriate, Cosmetique

fails to meet its burden of showing that transfer is warranted.

Cosmetique argues that witnesses and documents it needs to defend against SendTec's claim

are located primarily in Illinois.  SendTec responds that most of its relevant documents are stored in

St. Petersburg and provides a list of its key witnesses located in Florida.  "Where a transfer merely

shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain."  *Eye

Care Int'l, Inc. v. Underhill*, 119 F. Supp.2d 1313, 1319 (M.D. Fla. 2000).  That is precisely what

Cosmetique is attempting to do here.  While the Court certainly recognizes the inconvenience

traveling to Florida could cause some of Cosmetique's witnesses, the Court will not merely shift that

inconvenience to SendTec's witnesses.  The Court therefore rejects Cosmetique's argument.

Cosmetique next argues that the interest of justice militates in favor of a transfer of venue. It essentially puts forth the same argument this Court has already rejected, that its contacts with Florida are merely random and attenuated.  Finally, it argues that transfer is necessary because Illinois law governs the contract.  Although a choice of law provision weighs in favor of transfer, the Court will not transfer this case simply because another state's laws are applicable. *See Sterling*, 519 F. Supp.2d at 1208 (stating that this Court is competent to apply foreign law).  Cosmetique proffers little else to meet its burden.  Therefore, the Court will deny the motion to transfer the case to the Northern District of Illinois.

## IV.    Conclusion

Based upon the foregoing, Cosmetique's motion to dismiss (Doc. No. 8) is **DENIED**. Further, Cosmetique's motion to transfer this action to the Northern District of Illinois (Doc. No. 8) is **DENIED**.  Additionally, Cosmetique's motion to stay all of the deadlines in the scheduling order (Doc. No. 22) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of March, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record