UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SENDTEC, INC.,

    Plaintiff,

v.                                                        Case No. 8:07-cv-1643-T-24 TGW

COSMETIQUE, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Counterclaim Defendant SendTec, Inc.'s Motion to Dismiss and Strike. (Doc. No. 31). Counterclaim Plaintiff Cosmetique, Inc. opposes the motion. (Doc. No. 34)

**I. Background**

Cosmetique alleges the following in its counterclaim against SendTec (Doc. No. 27): Cosmetique's principal place of business is Illinois, and it is a direct marketer of cosmetics. SendTec's principal place of business is Florida, and it is an advertising agency that specializes in internet advertising.

Cosmetique entered into advertising agreements with SendTec, wherein SendTec agreed to advertise Cosmetique's products over the internet. Under the agreements, SendTec was to be paid a "Media Fee" and a "Performance Fee."

During the contract negotiations at Cosmetique's Illinois office, SendTec's agents misrepresented the nature and purpose of the Media Fee. Specifically, SendTec's agents repeatedly told Cosmetique that SendTec would not make any profit on the Media Fee because

the Media Fee would be paid, in its entirety, to the website publishers on whose websites SendTec placed Cosmetique's advertisements. Because SendTec led Cosmetique to believe that SendTec would not profit at all from the Media Fee, SendTec was paid a Performance Fee. The Performance Fee was a commission payment that was meant to compensate SendTec for its advertising services.

SendTec only paid a portion of the Media Fee to its website publishers and retained the difference for itself as a secret profit. SendTec knew that its representations regarding the nature of purpose of the Media Fee were false, but it made those representations in order to induce Cosmetique to pay artificially inflated Media Fee. Had Cosmetique known the truth, it would not have entered into the advertising contracts and agreed to pay SendTec the inflated Media Fee.

Additionally, Cosmetique alleges that SendTec placed Cosmetique's advertising on websites that violated state and/or federal laws, because the websites falsely or misleadingly promised consumers "free" gifts when, in fact, the consumer had to first incur expenses or other obligations. Specifically, SendTec placed some of Cosmetique's advertising on websites owned or affiliated with ValueClick, and SendTec listed Cosmetique as a sponsor of the "free" gifts. The Federal Trade Commission ("FTC") filed a complaint against ValueClick in connection with their practice of falsely or misleadingly promising consumers "free" gifts. ValueClick recently settled with the FTC by agreeing to pay $2.9 million in civil penalties.

As a result, Cosmetique asserts seven counterclaims against SendTec, including (1) fraudulent inducement (Count I), (2) negligent misrepresentation (Count II), and (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VII). SendTec moves

to dismiss Counts I, II, and VII and to strike the punitive damages request in connection with Count I.

**II. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted).

**III. Motion to Dismiss and Strike**[1]

SendTec moves to dismiss the following three claims: (1) fraudulent inducement, (2) negligent misrepresentation, and (7) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Act"). Additionally, SendTec moves to strike Cosmetique's request for punitive damages in connection with the fraudulent inducement claim. Accordingly, the Court will analyze each claim.

---

[1]The parties agree that Illinois law applies to the claims at issue in this motion.

### A. Fraudulent Inducement

Cosmetique asserts a fraudulent inducement claim based on SendTec's misrepresentations regarding the nature and purpose of the Media Fee; specifically, that SendTec would not make a profit off of that fee. The elements of a fraudulent inducement claim are: "(1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) made with intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) resulting damages." Jankousky v. Jewel Companies, Inc., 538 N.E.2d 689, 691 (Ill. App. Ct. 1989).

SendTec moves to dismiss the fraudulent inducement claim, arguing that Cosmetique failed to allege: (1) justifiable reliance, and (2) a material fact.[2] Additionally, SendTec argues that Cosmetique's request for punitive damages in connection with this claim must be stricken. As explained below, the Court rejects these arguments.

### 1. Justifiable Reliance

SendTec argues that Cosmetique could not have *justifiably* relied on the alleged oral misrepresentations regarding the nature and purpose of the Media Fee because the contracts contained integration clauses (stating that the contract contained the parties' entire agreement) and because Cosmetique had discretion to change the amount of the Media Fee. The Court disagrees.

There is a split among Illinois courts regarding whether an integration clause in a

---

[2]SendTec also argues that Cosmetique has failed to allege that it suffered any damages. This argument is somewhat confusing, and it simply consists of eight sentences with no citation to authority. Accordingly, the Court rejects this argument without further comment. SendTec may raise this argument again in a motion for summary judgment with citation to authority.

contract makes reliance on prior oral statements unreasonable as a matter of law.  See Vigortone AG Products, Inc. v. PM AG Products, Inc., 316 F.3d 641, 644 (7th Cir. 2003).  This Court is persuaded by those cases that find that the better rule is that an integration clause does not bar a fraud claim; rather, it merely prevents evidence of prior oral agreements when pursuing a contract claim.  See id.; W.W. Vincent & Co. v. First Colony Life Ins. Co., 814 N.E.2d 960, 968 (Ill. App. Ct. 2004).

Additionally, the Court rejects the argument that Cosmetique's reliance was not justified because Cosmetique had the discretion to change the Media Fee.  This argument misses the point, which is that Cosmetique was misled as to what the Media Fee was to be used for.  The fact that Cosmetique could alter the Media Fee (which then affected the advertising) does not change the fact that Cosmetique was misled about the purpose of the Media Fee and the total compensation that SendTec would ultimately receive.

Finally, the Court notes that whether reliance was justifiable is a question of fact.  See Schrager v. North Community Bank, 767 N.E.2d 376, 386 (Ill. App. Ct. 2002)(citation omitted).  As such, the Court rejects SendTec's argument on this issue.

### 2.  Material Fact

Next, SendTec argues that Cosmetique has not alleged that it misrepresented a *material* fact, since Cosmetique has not alleged the specific amount of the Media Fee retained by SendTec.  The Court rejects this argument.  The fact that Cosmetique has not alleged the precise amounts retained by SendTec is not fatal, because such information is within SendTec's knowledge and control.  Furthermore, "[a] materia fact exists where a buyer would have acted differently knowing the information," and Cosmetique has alleged that it would not have entered

into the advertising contracts and agreed to pay SendTec the inflated Media Fee had it known the truth. Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 595 (Ill. 1997)(citation omitted). Finally, the Court notes that "the issue of materiality is generally a question of fact." Golden Rule Ins. Co. v. Schwartz, 786 N.E.2d 1010, 1017 (Ill. 2003)(citation omitted).

### 3. Punitive Damages

Next, SendTec argues that Cosmetique's request for punitive damages in connection with its fraudulent inducement claim should be stricken, because the contracts between the parties contain clauses prohibiting punitive damages. In support of this argument, SendTec cites a case that stands for the proposition that when asserting contract claims, a plaintiff cannot enforce certain provisions of the contract and excise the rest. See Adams Laboratories, Inc. v. Jacobs Engineering Co., 486 F. Supp. 383, 388 (N.D. Ill. 1980). That case, however, is not on point, because Cosmetique is seeking punitive damages in connection with its *fraud* claim. Accordingly, the Court rejects this argument.

### B.  Negligent Misrepresentation

Next, SendTec argues that the negligent misrepresentation claim must be dismissed because it is barred by the economic loss rule. The Court agrees.

Cosmetique is seeking economic damages as a result of SendTec's alleged negligent misrepresentation regarding the Media Fee. Such is barred by the economic loss rule, unless SendTec is in the business of supplying information for the guidance of others in their business transactions. See First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 843 N.E.2d 327, 335 (Ill. 2006)(citations omitted). However, if "the information supplied is merely ancillary to the sale or in connection with the sale of merchandise or other matter," then the exception to the

6


economic loss rule for information suppliers does not apply. See Fireman's Fund Ins. Co. v. SEC Donohue, Inc., 679 N.E.2d 1197, 1201 (Ill. 1997)(citations omitted).

One Illinois court gave examples of information suppliers, which included accountants, a bank providing credit information to a potential lender, stockbrokers, aircraft inspectors, inventory inspectors, and termite inspectors. See Fox Assocs., Inc. v. Robert Half International, Inc., 777 N.E.2d 603, 607 (Ill. App. Ct. 2002)(citations omitted). As that court explained:

> The allegation that a defendant is in the business of providing information for the guidance of others is a legal conclusion that must be supported by well-pled factual allegations. To determine whether a party is in the business of supplying information, the precise facts of the specific case must be analyzed. The determination is dependent upon the nature of the information at issue and its relation to the kind of business being conducted. The critical question is whether the information is an important part of the product offered. [A] business[ ] will be deemed to be in the business of supplying information if the information furnished along with the non-informational goods or services is central to the business transaction.

Id. at 608 (internal citations and quotation marks omitted).

Cosmetique argues that SendTec is an information supplier because Cosmetique "hired SendTec to develop an Internet advertising program, to provide information regarding the costs associated with advertising on certain Websites, and to provide guidance on which Websites would provide Cosmetique the best value and best opportunity to acquire new" customers. (Doc. No. 34, p. 13). Further, Cosmetique argues that "central to the business transaction was SendTec's guidance to Cosmetique through the unfamiliar and technical world of Internet advertising, and a key component of that guidance was the cost of embarking on an Internet Advertising campaign." (Doc. No. 34, p. 13). The Court is not persuaded by these arguments.

The purpose of the contracts at issue in this case is that SendTec agreed to create internet

advertising for Cosmetique. The discovery of the actual cost to put an advertisement on a website was not the central purpose of the contracts; instead, such cost information was merely ancillary to the advertising agreements.

Information providers are those who gather, evaluate, and disseminate information, such as accountants, a bank providing credit information to a potential lender, stockbrokers, aircraft inspectors, inventory inspectors, and termite inspectors. Those who merely supply information in connection with providing a product or service, such as an employment agency, an engineer, or a title insurer, do not fall within the information supplier exception to the economic loss rule. See First Midwest Bank, 843 N.E.2d at 336; Fireman's Fund, 679 N.E.2d at 1202; Fox Assocs., 777 N.E.2d at 609.

The fact that the contracts at issue in this case are affected by the prices charged by websites and the price information is conveyed to Cosmetique by SendTec does not make SendTec an information supplier. This Court notes that in Fireman's Fund, the court found that an engineer that supplied drawings and plans identifying the location where a contractor was to dig was not an information supplier under the exception to the economic loss rule, despite the fact that the contractor used the plans to determine where to dig. 679 N.E.2d at 1198. If the engineer in Fireman's Fund was not deemed an information supplier, then clearly SendTec would not be considered an information supplier. As stated by one court, "[i]nformation is a part of nearly every commercial transaction . . ., and it is plainly wrong to suggest that its presence (even its influential presence) is enough to satisfy the 'in the business of supplying information' requirement." PXRE Reinsurance Co. v. Lumbermans Mutual Casualty Co., 342 F. Supp.2d 752, 757 (N.D. Ill. 2004)(finding that the information provided by the defendant while the

parties negotiated the agreement was ancillary to the transaction, and therefore, the defendant was not in the business of supplying information).

Since the purpose of the contracts was for SendTec to create advertising programs for Cosmetique, the information supplied by SendTec regarding the cost of putting an advertisement on a website was merely ancillary to the transaction. Therefore, any negligence in reporting such information is not actionable, because it is barred by the economic loss rule and does not fall within the information supplier exception. Accordingly, the Court dismisses SendTec's negligent misrepresentation claim.

### C.  Violation of the Act

Next, SendTec argues that (1) the Act does not apply, (2) Cosmetique lacks standing, and (3) Cosmetique has failed to allege a violation of the Act.[3] Accordingly, the Court will address each argument.

#### 1. Applicability of the Act

The Act only applies "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." Avery v. State Farm Mutual Automobile Ins. Co., 835 N.E.2d 801, 853-54 (Ill. 2005). SendTec argues that the Act does not apply, because Cosmetique has not alleged that the allegedly deceptive transaction occurred in Illinois. The Court disagrees.

Cosmetique alleges that the deceptive acts (SendTec's misrepresentation about the Media

---

[3]SendTec also argues that Cosmetique fails to state a claim under the Act because it has not alleged a material misstatement with specificity. The Court has previously rejected this argument in connection with the fraudulent inducement claim.

9

Fee during contract negotiations) occurred in Illinois.  This case is distinguishable from Vulcan Golf, LLC v. Google, Inc., 2008 WL 818346, at *16 (N.D. Ill. Mar. 20, 2008), cited by SendTec, in which the court concluded that since there was no allegation that the deceptive practices (defendants scheme of using deceptive domain names on the internet that were similar to the plaintiff's domain name) primarily and substantially occurred in Illinois, the Act did not apply. Accordingly, the Court rejects SendTec's argument on this issue.

### 2.  Standing

Next, SendTec argues that Cosmetique lacks standing to pursue a claim for a violation of the Act based on the alleged misrepresentation about the Media Fee.  Specifically, SendTec argues that Cosmetique does not meet the test that determines whether a non-consumer business has standing to pursue a claim under the Act.

Cosmetique responds that it is a consumer, so the non-consumer business test is inapplicable.  The Court agrees.  See Skyline International Development v. Citibank, F.S.B., 706 N.E.2d 942, 946(Ill. App. Ct. 1998)(citation omitted)(finding that the non-consumer business test does not apply to businesses who are the consumer of the defendant's product or services); Lefebvre Integraphics, Inc. v. Sanden Machine Ltd., 946 F. Supp. 1358, 1369 (N.D. Ill. 1996)(same).

The Act defines a consumer as one who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of business.  815 ILCS 505/1(e).  Further, the Act defines merchandise to include services.  815 ILCS 505/1(b).  In the instant case, Cosmetique was the consumer of SendTec's advertising services.  Accordingly, the Court rejects SendTec's argument that Cosmetique lacks standing.

### 3. Failure to Allege a Violation

Next, SendTec argues that Cosmetique has failed to allege a violation of the Act by SendTec, based on the deceptive promises of "free" gifts on the ValueClick website. Therefore, SendTec argues that ValueClick committed the deceptive acts, and SendTec cannot be held liable for ValueClick's conduct. See Zekman v. Direct American Marketers, Inc., 695 N.E.2d 853, 859 (Ill. 1998)(stating that "the Act does not include anything that makes it unlawful to knowingly receive the benefits of another's fraud").

Cosmetique responds that SendTec designed an advertising campaign for Cosmetique that included SendTec listing Cosmetique as a sponsor of the "free" gifts on the ValueClick website. The Act provides that a person engages in a deceptive trade practice when the person "causes the likelihood of confusion or of misunderstanding as to the . . . sponsorship . . . of goods or services." 815 ILCS 510/2(a)(2). Therefore, Cosmetique argues, it has adequately alleged that SendTec has violated the Act. Since SendTec's motion did not address Cosmetique's argument that SendTec's listing of Cosmetique as a sponsor of the "free" gifts violated the Act, the Court declines to dismiss Cosmetique's claim.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that SendTec, Inc.'s Motion to Dismiss and Strike (Doc. No. 31) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court dismisses Cosmetique's negligent misrepresentation claim; otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of June, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

11